

# In the United States Court of Federal Claims

No. 16-138C
Filed: July 27, 2016

**FILED**
JUL 2 7 2016
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * *
**KEVIN DIAZ,**
           Plaintiff,
v.
**UNITED STATES, et al.,**[1]
           Defendant.
* * * * * * * * * * * * * * * * * * *

Pro Se Plaintiff; Subject Matter Jurisdiction; Attorney Representation for a Business Entity; RCFC 83.1(a)(3); Standing.

**Kevin Diaz**, pro se, Boston, Ma.

**Alison S. Vicks**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Douglas K. Mickle**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C.

---

[1] Plaintiff also lists as defendants: "Renee Brown, Deputy Chief[,] Navy, IHEODTD Contracting Office and Thomas Kearney, Executive Officer and Director of Commonality[,] Navy, AEODRS Program and Michael Meyers, Director Future Naval Capabilities SBIR Transition Program[,] Navy, Office of Naval Research and Lee Mastroianni, Force Protection Thrust Manager[,] Navy, Office of Naval Research." All claims filed in the United States Court of Federal Claims, however, must be filed against the United States as the only defendant. See Rule 10(a) of the Rules of the United States Court of Federal Claims (RCFC) (2015). The United States Supreme Court has indicated, for suits filed in the United States Court of Federal Claims and its predecessors, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted); see also Kurt v. United States, 103 Fed. Cl. 384, 386 (2012); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003). Because it is well-established that this court does not have jurisdiction to hear any claims against defendants other than the United States, all of plaintiff's claims against any proposed defendant other than the United States are dismissed.

USPS TRACKING # & CUSTOMER RECEIPT   9114 9014 9645 0594 5520 23
For Tracking or inquiries go to USPS.com or call 1-800-222-1811

# OPINION

**HORN, J.**

## FINDINGS OF FACT

Pro se plaintiff, Kevin Diaz,[2] filed a complaint in the United States Court of Federal Claims on January 28, 2016, alleging that the United States Department of the Navy (Navy) wrongfully rejected his unsolicited proposal and "failed to comply with Federal Acquisition Regulation (FAR) Subpart 15.6 during the agency's review process." See 48 C.F.R. § 15.6 (2016). As relief, plaintiff seeks $1,400,000.00 in damages. Before filing a complaint in this court, plaintiff had filed a similar complaint with the United States Armed Services Board of Contract Appeals (ASBCA), alleging substantially the same claims, but seeking a different amount of monetary relief of $725,000.00 in damages.[3] On March 29, 2016, the ASBCA granted defendant's motion to dismiss for lack of jurisdiction on the basis that plaintiff had not alleged the existence of a contract. See In re Kevin Diaz, A.S.B.C.A. No. 60369, 2016 WL 1446472 (Mar. 29, 2016).

Plaintiff's complaint, which was filed in this court while the ASBCA case was still pending, alleges substantially the same material facts as plaintiff alleged before the ASBCA. Although, in this court, plaintiff seeks to recover $1,400,000.00 in damages, plaintiff also states in his complaint that he "has been damaged by the Defendant in the sum of $2,500,000.00," which is the price proposed in the unsolicited proposal.[4]

According to plaintiff's filings in this court, plaintiff purportedly developed what was described, among other designations, as a "Hybrid UGV/USV Breaching Module System," about which he, allegedly, had been communicating with a number of Navy personnel since 2013. Plaintiff alleges that, on September 28, 2015, he submitted an unsolicited proposal titled "Hybrid UGV/USV Breaching Module System," which was received by the Navy's Indian Head Explosive Ordnance Disposal Technology Division (IHEODTD), the division which handles proposals of Explosive Ordnance Disposal (EOD)-related technology development for the Navy. The unsolicited proposal listed the "Prime Offeror" as "MERAD," identified in the unsolicited proposal as a "Small Business," not plaintiff, Mr. Diaz. Mr. Diaz was listed on the unsolicited proposal as the "Technical and Business

---

[2] The unsolicited proposal and multiple e-mail chains attached to plaintiff's complaint indicate that the plaintiff identified himself to the Navy as "Kevin Mark Diaz" and also as "Mark Diaz." Plaintiff, however, signed his pleadings in this court as "Kevin Diaz." Accordingly, the court refers to the pro se plaintiff as Kevin Diaz.

[3] In addition to monetary relief, plaintiff requested that the ASBCA "grant an enforcement motion and judgment in its' favor and against the defendant with a binding decision for evaluation, and negotiation with cooperation for contract acceptance as an appropriate remedy and dispute resolution."

[4] Capitalization, grammar, punctuation, and other errors are quoted in this opinion as they appear in plaintiff's submissions.

Contact." According to plaintiff, the unsolicited proposal purportedly explained a "[t]echnology development . . . for fragmentation protection with simultaneous downward reactions from shockwaves being patented modular Force Protection."

On November 2, 2015, a contracting officer from IHEODTD issued a decision letter to "Mark Diaz" via e-mail, stating that the unsolicited proposal did not meet the requirements of FAR Subpart 15.606–1. See 48 C.F.R. § 15.606–1. The decision letter stated that "it was determined that the information submitted to NSWC [Naval Surface Warfare Center] IHEODTD did not include sufficient detail to permit a determination that Government support could be worthwhile." Therefore, the unsolicited proposal was not forwarded for further evaluation in accordance with FAR Subpart 15.606-1. After receiving the decision letter, plaintiff provided additional documents to try to supplement the original unsolicited proposal, but the contracting officer's decision was not changed, as indicated in a subsequent letter, dated November 19, 2015, from the contracting officer to "Mr. Mark Diaz."

In this court, plaintiff alleges that defendant's review of the unsolicited proposal was not in accordance with FAR Subpart 15.6. Plaintiff alleges that the unsolicited proposal was wrongfully rejected because it "has verbatim requirements of FAR Subpart 15.6," and "the nature of the Defendant's review results is in omission of the highly relevant factor of Fragmentation Protection." Specifically, plaintiff alleges three claims in his complaint:

- Claim 1) The Defendant failed to comply with Federal Acquisition Regulation (FAR) Subpart 15.6 when reviewing the proposal for requirements, where defendant omitted the Proposal's primary feature Fragmentation Protection.

- Claim 2) The Defendant failed to provide any opportunity for funding Research, Development, and Acquisition for the Plaintiff, a Small Business, as delineated in Federal Acquisition Regulation §15.602.

- Claim 3) The Defendant failed in execution to "(2) Ensure the attainment of state-of-the art DoD emergency and wartime EOD capabilities," and (3) Use rapid prototyping capabilities, followed by streamlined procurement procedures as much as possible, in accordance with law, regulations, and policy" according to DoD Directive 5160.62.

Plaintiff further alleges that defendant "has made an unreasonable decision" in not considering "the relevant factor of Fragmentation Barriers within the Proposal." He also alleges that the FAR requirements were "manipulated subjectively in order to subvert opportunity away from the Small Business considered for funding for innovation development to be delivered to the Government," and that "the Contracting Office creates convoluted circumstances delaying technology development." Plaintiff asserts that the unsolicited proposal's content "satisfies the regulations as conditions to be met for evaluation." As a result, plaintiff alleges that "the Contracting Officer's review was not

3

rational, was in error or did not exercise her discretion for not reviewing the Proposal's primary Fragmentation Barrier systems experimentation and is clearly an unreasonable determination." Plaintiff contends that he was "prejudiced by the error." Plaintiff alleges that the Navy had acted to obtain funding and indicated to plaintiff that it would continue to "pursue funding with [plaintiff] as opportunities arise" for the technology proposed in the unsolicited proposal, and, according to plaintiff, that demonstrates that there was a "substantial chance" that plaintiff would have received a contract award.

Plaintiff contends that he "will be irreparably harmed by the lost opportunity to compete for the technology funding" and requests that the court consider "all avenues for relief and a just decision." In addition to monetary damages, plaintiff's complaint also seeks other forms of relief, including:

> A) Enter into a government-industry partnership with a services contract venue by the IHEODTD to develop the Fragmentation Barriers to Technology Readiness Level 9 (TRL-9) through binding alternative dispute resolution.
> B) Work on further simulation tasks under a $150,000 Phase I contract including Phase II product prototyping and integration task with a prime contractor.
> C) Receive preparation cost of technical proposal possessing new Technology & Capability.
> D) Enter into assignee agreement for various patents and previous application rights.
> E) Develop the Technology through a two year service contract in the AEODRS [Advance Explosive Ordnance Disposal Robotic System] program.

In response to plaintiff's complaint, defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) (2015) and RCFC 12(b)(6). Defendant argues that plaintiff's complaint should be dismissed because "Mr. Diaz has failed to identify a money-mandating provision as required to confer Tucker Act jurisdiction." Alternatively, defendant argues that "this case should be dismissed for failure to state a claim because Mr. Diaz has failed to allege that he has an implied-in-fact contract with the United States, and the facts as alleged do not support such a finding." Plaintiff opposes defendant's motion to dismiss, and asserts that he has provided "ample factual evidence . . . regarding the Agency's FAR review violations and . . . the circumstances of mutual intent to contract." Plaintiff also moves for summary judgment.

## DISCUSSION

This court recognizes that plaintiff is proceeding pro se in this action, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers") reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551

4

U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

As a threshold issue, the court notes that plaintiff, Mr. Diaz, may be attempting to litigate the claims raised in the complaint on behalf of a business entity named "MERAD." Plaintiff's submissions to this court indicate that "MERAD" is a "Small Business" entity. Below is an excerpt from the unsolicited proposal's cover page:

Prime Offeror<br>
MERAD<br>
Type of Organization: Small Business<br>
Duns Number 968510458<br>
Cage Code75K51

RCFC 83.1(a)(3) provides that an "individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any other proceeding before this court." RCFC 83.1(a)(3) (2015) (emphasis added); see, e.g., Talasila, Inc. v. United States, 240 F.3d 1064, 1066 (Fed. Cir.) ("[A corporation] must be represented by counsel in order to pursue its claim against the United States in the Court of Federal Claims."), reh'g and reh'g en banc denied (Fed. Cir. 2001); Affourtit v. United States, 79 Fed. Cl. 776, 779 (2008) ("A corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney."); Finast Metal Prods., Inc. v. United States, 12 Cl. Ct. 759, 761 (1987) ("[A] corporate 'person' can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual."). This rule applies despite possible financial hardship imposed on the plaintiff. See Richdel, Inc. v. Sunspool Corp.,

5

699 F.2d 1366, 1366 (Fed. Cir. 1983) (holding that even plaintiff's "substantial financial hardship" did not waive the rule requiring corporations to be represented by counsel); Balbach v. United States, 119 Fed. Cl. 681, 683 (2015) ("[A] pro se plaintiff cannot represent a corporation . . . . The Court cannot waive this rule, even for cases of severe financial hardship." (citing Affourtit v. United States, 79 Fed. Cl. at 780)); Alli v. United States, 93 Fed. Cl. 172, 176 (2010) (citing 28 U.S.C. § 1654 (2009)) (Although Congress allowed private individuals to proceed pro se in the courts of the United States, "it has never permitted corporations or other separate business entities to do the same.").

Plaintiff's sometimes confusing submissions to the court, including his complaint, allege that the Navy improperly reviewed the unsolicited proposal submitted to the agency. According to exhibits attached to plaintiff's complaint filed in this court, in September 2015, "MERAD," not plaintiff Diaz, submitted an unsolicited proposal to the Navy, in which MERAD was listed as the "Prime Offeror." As noted above, although it is not clear whether MERAD is a corporation, MERAD is described in the unsolicited proposal as a business entity. Specifically, MERAD was described as a "Small Business" in the unsolicited proposal, with Mr. Diaz listed as the "Technical and Business Contact." In the November 2, 2015 decision letter from the IHEODTD contracting officer, the name "MERAD" appears under plaintiff's name "Mark Diaz." "MERAD" also appears in multiple e-mails, in which the unsolicited proposal was discussed between plaintiff and several Navy officials, whereas plaintiff identified himself in these e-mails as the "Project Manager for MERAD." For example, Plaintiff described himself as "the Project Manager for MERAD" in an e-mail to the Navy on September 11, 2015, and he also identified himself as the point of contact for MERAD in the unsolicited proposal. Furthermore, the unsolicited proposal states that, "[t]he company MERAD was started in 2010 as a team effort." Plaintiff's complaint, however, sometimes identifies the offeror of the unsolicited proposal as MERAD, the "Small Business" or "he," presumably, Mr. Diaz, or "Kevin Mark Diaz." On balance, the record suggests, however, that the actual offeror of the unsolicited proposal appears to have been "MERAD," a "Small Business," with Mr. Diaz working in some capacity for "MERAD." Because there is no evidence that Mr. Diaz is an attorney admitted to the bar of this court, pursuant to RCFC 83.1(a)(3), and he makes no claims to be an attorney, having filed the complaint pro se with no reference to a membership in the bar of any state, he cannot represent either "a corporation, an entity, or any other person" other than himself or an immediate family member in this court. RCFC 83.1(a)(3). Given that it appears plaintiff is attempting to litigate on behalf of, or to represent, "MERAD," a business entity, plaintiff's complaint should be dismissed in accordance with RCFC 83.1(a)(3).

Alternatively, the court also may not consider plaintiff's claims if the court lacks subject matter jurisdiction. See Barlow & Haun, Inc. v. United States, 805 F.3d 1049, 1060 (Fed. Cir. 2015); Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004); PIN/NIP, Inc. v. Platte Chem. Co., 304 F.3d 1235, 1241 (Fed. Cir. 2002). Generally, this court has jurisdiction to hear claims pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (2012), which provides that this court has

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed

contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). Based on a liberal construction of Mr. Diaz's pro se pleadings, it appears that plaintiff is challenging the government's review of the unsolicited proposal pursuant to FAR Subpart 15.6, and failure to enter into a contract with plaintiff or MERAD based on the unsolicited proposal. Specifically, plaintiff alleges that defendant "failed to comply with FAR Subpart 15.6 when reviewing the proposal for requirements," and that the "Contracting Officer has made an unreasonable decision" when rejecting the unsolicited proposal. In response, defendant argues that this court does not have jurisdiction under 28 U.S.C § 1491(a)(1) because the regulation on which plaintiff tries to rely does not confer a substantive right to recover money damages.

If the court does not have subject matter jurisdiction to consider plaintiff's claims, then plaintiff's motion for summary judgment becomes moot. See Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.) reh'g denied (Fed. Cir. 1993); see also Estes Express Lines v. United States, 123 Fed. Cl. 538, 550 (2015) (dismissing parties' cross motions for summary judgment as moot because the court did not possess jurisdiction to consider plaintiff's claim). It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction

7

at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))) (Fed. Cir. 2008); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 562 U.S. 1169 (2011).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

In addition to the complaint, the court may consider exhibits to the complaint. See RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Moreover, "the court 'must . . . consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice.'" Bell/Heery v. United States, 106 Fed. Cl. 300, 307 (2012), aff'd, 739 F.3d 1324 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, (2007)) (omission in Bell/Heery v. United States). The court also may consider a document when the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint. See id. at 307–08. Moreover, "[i]n deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record." Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999), cert. denied, 529 U.S. 1065 (2000); see also Bristol Bay Area Health Corp. v. United States, 110 Fed. Cl. 251 261–62 (2013); DeKalb Cnty., Ga. v. United States, 108 Fed. Cl. 681, 692 (2013).

If Mr. Diaz could be verified as the proper plaintiff, an alleged violation of FAR Subpart 15.6 might suffice to establish subject matter jurisdiction, however, plaintiff must also establish standing as an interested party in order to pursue his complaint in this

court.[5] See 48 C.F.R. § 15.6; Distributed Sols., Inc. v. United States, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008) ("A non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction."); see also, Def. Tech., Inc. v. United States, 99 Fed. Cl. 103, 114–15 (2011) (finding that court has jurisdiction over plaintiff's bid protest claim because plaintiff alleges a violation of FAR Subpart 15.305(b) which is "in connection with a procurement or a proposed procurement" (quoting 28 U.S.C. § 1491(b)(1)); Magnum Opus Techs., Inc. v. United States, 94 Fed. Cl. 512, 527 (2010) (finding that court possesses jurisdiction over plaintiffs' complaint that the Air Force exercised the options in violation of law and regulation, namely CICA [Competition in Contracting Act] and FAR Subpart 17.207(f)); FFTF Restoration Co., LLC v. United States, 86 Fed. Cl. at 237–38 ("[T]he court finds that the violations of FAR 1.102 alleged by the plaintiff in the context of the cancellation of a negotiated procurement constitute 'alleged violation[s] of statute or regulation in connection with a procurement,' over which this court has jurisdiction pursuant to 28 U.S.C. § 1491(b)(1)."); ES-KO, Inc. v. United States, 44 Fed. Cl. 429, 432 (1999) ("This court . . . has jurisdiction to render judgment on plaintiff's action, which alleges a violation of FAR § 33.103(f)(3), a regulation 'in connection with a procurement.'" (quoting 28 U.S.C. § 1491(b)(1))).

Pursuant to 28 U.S.C. § 1491(b)(1), this court has "jurisdiction to render judgment on an action by an interested party" objecting to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," including a violation of a FAR provision. 28 U.S.C. § 1491(b)(1). In the context of traditional pre and post award bid protests, which typically allege violations of various FAR provisions, in order to have standing to sue as an "interested party" under the Tucker Act, 28 U.S.C. § 1491(b)(1), a protestor must establish that "it is (1) an actual or prospective bidder and (2) that it has a direct economic interest" in the contract award, or failure to award a contract. CGI Fed. Inc. v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2015) (citing Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012)); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (citations omitted) (also noting that the "'interested party' standard is more stringent than" the "'case or controversy'" requirement of Article III of the United States Constitution); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1375 (Fed. Cir. 2009);

---

[5] Plaintiff also alleges that defendant violated "DoD directive 5160.62 to '(2) Ensure the attainment of state-of-the art DoD emergency and wartime EOD capabilities, and (3) Use rapid prototyping capabilities, followed by streamlined procurement procedures as much as possible, in accordance with law, regulations, and policy.'" Jurisdiction over a challenge to DoD directive 5160.62 under the Tucker Act, however, is not viable. See Am. Tel. & Tel. Co. v. United States, 307 F.3d 1374, 1380 (Fed. Cir. 2002) (holding that cautionary and informative regulations and directives including DoD Directive 5000.1 provide only internal governmental direction, which "supply no remedy for private parties in a judicial forum") (emphasis added); FFTF Restoration Co., LLC v. United States, 86 Fed. Cl. 226, 239 (2009) (finding that the court has no jurisdiction over a challenge to particular procurement regulations that are only "cautionary and informative regulations and directives").

9

MVS USA, Inc. v. United States, 111 Fed. Cl. 639, 647 (2013); Preferred Sys. Solutions, Inc. v. United States, 110 Fed. Cl. 48, 56 (2013); Miles Constr., LLC v. United States, 108 Fed. Cl. 792, 797 (2013).

In a traditional pre or post award bid protest, to demonstrate the requisite direct economic interest, a disappointed bidder must show that it suffered a competitive injury or was "prejudiced" by an alleged error in the procurement process. See Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015) ("To establish standing, Tinton Falls must show that it is an interested party that will be prejudiced by the award of the contract to DMC [another contractor]." (citing Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003))); CGI Fed. Inc. v. United States, 779 F.3d at 1351; Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d at 1384; Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract')." (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009))); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1317 (Fed. Cir. 2007); see also Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 281 (2012); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 693 (2010) ("In order to establish standing to sue, the plaintiff in a bid protest has always needed to demonstrate that it suffered competitive injury, or 'prejudice,' as a result of the allegedly unlawful agency decisions." (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1580–81 (Fed. Cir. 1996); Vulcan Eng'g Co. v. United States, 16 Cl. Ct. 84, 88 (1988); Morgan Bus. Assocs., Inc. v. United States, 223 Ct. Cl. 325, 332 (1980))). In order to establish what one Judge on this court has called "allegational prejudice," the bidder must show that there was a "substantial chance" it would have received the contract award, but for the alleged procurement error. See Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. at 675; see also Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319, reh'g and reh'g en banc denied (Fed. Cir. 2003); Statistica, Inc. v. Christopher, 102 F.3d at 1581; Hyperion, Inc. v. United States, 115 Fed. Cl. 541, 550 (2014) ("The government acknowledges that proving prejudice . . . merely requires "allegational prejudice," as contrasted to prejudice on the merits . . . ."); see also Bannum, Inc. v. United States, 115 Fed. Cl. 148, 153 (2014); Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 557 (2012). Plaintiff bears the burden of proving that there was a substantial chance of receiving a contract award. See Bannum, Inc. v. United States, 404 F.3d at 1358; Sims v. United States, 112 Fed. Cl. 808, 815 (2013); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Statistica, Inc. v. Christopher, 102 F.3d at 1582.

In the above-captioned case, plaintiff argues that defendant wrongfully rejected the unsolicited proposal because the contracting officer failed to properly review the unsolicited proposal, "failed in the simple assignment to identify the Proposal's primary

10

feature Fragmentation Protection," and violated FAR Subpart 15.602 to provide any opportunity for funding "Research, Development and Acquisition for the Plaintiff, a Small Business." The unsolicited proposal, included as an attachment to plaintiff's complaint, appears to describe a technology to dissipate shockwaves over time so that the "shockwave hitting the soldier, civilian, vehicle or robot is partially by-passed." According to the unsolicited proposal, "[t]he reaction dynamics within the device have the means and methods for wave dissipation and transmission to reduce the amplitude of the shockwave as it passes through this new advanced material and device." The unsolicited proposal mentions the words "fragmentation protection" along with the "shockwave." The contracting officer's decision letter, dated November 2, 2015, states that, "[a]ccording to the abstract, the primary proposal seems to be the design of shockwave mitigation technology which could be integrated onto a UGV (based on context, presumed to mean 'Unmanned Ground Vehicle' (the acronym is never spelled out)[)]."

FAR Subpart 15.600 "sets forth policies and procedures concerning the submission, receipt, evaluation, and acceptance or rejection of unsolicited proposals," and FAR Subpart 15.606 requires agencies to "establish procedures for controlling the receipt, evaluation, and timely disposition of unsolicited proposals." 48 C.F.R. § 15.600, § 15.606. FAR Subpart 15.603(c) requires that an unsolicited proposal must:

(1) Be innovative and unique;
(2) Be independently originated and developed by the offeror;
(3) Be prepared without Government supervision, endorsement, direction, or direct Government involvement;
(4) Include sufficient detail to permit a determination that Government support could be worthwhile and the proposed work could benefit the agency's research and development or other mission responsibilities;
(5) Not be an advance proposal for a known agency requirement that can be acquired by competitive methods; and
(6) Not address a previously published agency requirement.

48 C.F.R § 15.603(c). The court notes that, FAR Subpart 15.606-1 states that the government must determine if an unsolicited proposal is valid and meets the requirements of FAR Subpart 15.603(c), "[b]efore initiating a comprehensive evaluation," which could lead to the award of a contract. 48 C.F.R. § 15.606-1(a). Thus, the determination as to whether an unsolicited proposal is valid and meets the requirements of FAR Subpart 15.603(c) is a preliminary determination that necessarily precedes a potentially more comprehensive evaluation. In the above-captioned case, the contracting officer determined that MERAD's or plaintiff's unsolicited proposal was not a viable unsolicited proposal that warranted a more comprehensive evaluation because it failed to meet the requirements of FAR Subpart 15.603(c). As a result, the unsolicited proposal was not forwarded for a comprehensive evaluation because it failed to satisfy the preliminary evaluation. Even if plaintiff's unsolicited proposal had been forwarded for a comprehensive evaluation, there is no indication or guarantee that the unsolicited proposal would have had a substantial chance of receiving funding and a contract award.

In the above-captioned case, the record indicates that the agency conducted the initial review of the unsolicited proposal based on the requirements of FAR Subpart 15.603(c). Subsequent to the initial review, the contracting officer, promptly, on November 2, 2015, informed plaintiff of the reasons for rejection of the unsolicited proposal in writing. See 48 C.F.R. § 15.606-1. In the contracting officer's decision letter, issued November 2, 2015, the contracting officer stated that "an initial review was conducted to determine the validity of the proposal meeting the requirements stated in FAR 15.603(c)." According to the contracting officer, the unsolicited proposal failed to meet the requirements under FAR Subpart 15.603(c) to be considered a valid unsolicited proposal. The contracting officer provided to "Mark Diaz" a careful and specific response, which found, among other defects in the unsolicited proposal, that the unsolicited proposal failed to "[b]e innovative and unique" because "there is a distinct lack of specific, clear, and technically coherent explanation . . . which would lead an evaluator to determine that an innovative or unique approach was indeed being proposed." The contracting officer explained that the unsolicited proposal failed to "[i]nclude sufficient detail to permit a determination that Government support could be worthwhile and the proposed work could benefit the agency's research and development or other mission responsibilities," as the unsolicited proposal was "a compilation of ideas based on research work concepts . . . [that] offers no coherent design and test plan that is worthy of Government support." The contracting officer also determined that "parts of the proposal offer design and fabrication of unmanned vehicles, which are not unique." As for the requirement that an unsolicited proposal "[b]e independently originated and developed by the offeror," the contracting officer concluded that "[i]t could not be determined during the initial review if the information provided was independently originated and developed by the offeror" because "[t]he proposal contains language which indicates the offeror is somewhat familiar . . . with DoD agency elements, program offices, military commands, and mission tasking." See id. Furthermore, the contracting officer found that "[i]t could not be determined whether this knowledge was gained via prior military or contract support experience, available publicly, or provided from other government agencies to assist in this proposal." As a result, the contracting officer was unable to conclude that the unsolicited proposal met the requirement to "[b]e prepared without Government supervision, endorsement, direction, or direct government involvement." Therefore, the contracting officer concluded, and informed plaintiff, that the information provided "did not include sufficient detail to permit a determination that Government support could be worthwhile."

After further inquiry from Mr. Diaz, and after indicating that "[t]he Government has completed an additional technical review," on November 19, 2015, the contracting officer reconfirmed her earlier rejection of the unsolicited proposal. In the second letter, dated November 19, 2015, the contracting officer indicated that the agency "will not conduct additional technical reviews on the subject." Based on the record before the court, it appears that the agency undertook a serious review of the unsolicited proposal in accordance with FAR Subpart 15.603(c) and carefully explained the reasons for not initiating a more comprehensive evaluation of the unsolicited proposal to plaintiff. Plaintiff, therefore, has failed to establish that plaintiff had a substantial chance of receiving a contract award.

The court also notes for plaintiff's benefit that, although certainly government officials are not immune from making mistakes, there is a strong presumption of the regularity accompanying government proceedings. See, e.g., Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003); Porter v. United States, 163 F.3d 1304, 1316 (Fed. Cir. 1998), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 528 U.S. 809 (1999). The doctrine "allows courts to presume that what appears regular is regular, [and] the burden shift[s] to the [plaintiff] to show the contrary." Rizzo v. Shinseki, 580 F.3d 1288, 1292 (Fed. Cir. 2009) (quoting Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001)).

In Sickels v. Shinseki, the United States Court of Appeals for the Federal Circuit indicated, "[a]s we stated in Rizzo, '[t]he presumption of regularity provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties.'" Sickels v. Shinseki, 643 F.3d 1363, 1366 (Fed. Cir. 2011) (quoting Rizzo v. Shinseki, 580 F.3d at 1292 (quoting Miley v. Principi, 366 F.3d 1343, 1347 (Fed. Cir. 2004))). As similarly noted in Impresa Construzioni Geom. Domenico Garufi v. United States:

> The cases also establish that, in determining whether to require an explanation, the agency decision is entitled to a presumption of regularity. Bowen v. Am. Hosp. Assn., 476 U.S. 610, 626-27 (1986); Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 n.9, (1983); United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926) . . . . The litigant challenging that presumption necessarily bears a heavy burden.

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (footnote omitted); see also Tippett v. United States, 98 Fed. Cl. 171, 177 (2011); Ala. Aircraft Indus., Inc.-Birmingham v. United States, 82 Fed. Cl. 757, 773 (2008) ("[A]gency decisions, including those of contracting officers, are entitled to a presumption of regularity, 'unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1338)).

In the case currently under review, the contracting officer appears to have acted properly after receiving the unsolicited proposal. The contracting officer's November 2, 2015 decision letter provided Mr. Diaz with a thorough and specific response, stating the reasons for rejecting the unsolicited proposal. Furthermore, the contracting officer indicated in the second letter, dated November 19, 2015, that the decision of rejecting the unsolicited proposal "remains unchanged" after the agency "has completed an additional technical review" of the information that Mr. Diaz submitted on November 4, 2015 to try to supplement and explain the original unsolicited proposal.

Alternatively, plaintiff argues that defendant violated the policy in FAR Subpart 15.602 to "encourage new ideas from small businesses." 48 C.F.R. § 15.602. FAR Subpart 15.602 only suggests generally that "[i]t is the policy of the Government to encourage the submission of new and innovative ideas," and that if "the new and innovative ideas do not fall under topic areas publicized" by the government, "the ideas

may be submitted as unsolicited proposals." 48 C.F.R. § 15.602 (emphasis added). Based on the language of the provision, although FAR Subpart 15.602 encourages the submission of new and innovative ideas, it does not guarantee that an unsolicited proposal will be funded or even that an unsolicited proposal will be forwarded for a more comprehensive evaluation after the initial evaluation. There is no guarantee of a substantial chance of receiving a contract award. Here, after the initial review, the agency determined that the initial requirements of FAR Subpart 15.603(c) had not been met.

Plaintiff also alleges that the agency previously had pursued funding for the technology proposed in the unsolicited proposal. Plaintiff alleges that "there was action by IHEODTD to seek funding for this technology one year earlier." According to plaintiff, the agency's alleged intent to pursue funding must indicate that plaintiff has a substantial chance of receiving a contract award in response to the unsolicited proposal. Plaintiff further cites to an undated e-mail from an IHEODTD "Customer Advocate for Science and Technology" which states, "I [the Customer Advocate] will be happy to continue to pursue funding with you as opportunities arise." This e-mail, however, was not a promise to fund the unsolicited proposal. Plaintiff fails to show how a statement by a government "Customer Advocate for Science and Technology" that he would be "happy to continue to pursue funding" with plaintiff as "opportunities arise" proves that plaintiff would have had a substantial chance of securing a contract award for funding the unsolicited proposal. Plaintiff further contends that he had a substantial chance of receiving a contract award because his unsolicited proposal was put into "the POM [Program Objective Memorandum]-16 funded and the POM-15 unfunded list," but the attachments to plaintiff's complaint suggest that the unsolicited proposal only was archived for review "for FY [Fiscal Year] 16 or a FY15 Unfunded Requirement" to see if "there is an application" to the agency's work. Among all the e-mail chains with Navy officials attached to plaintiff's complaint, none evidence any kind of promise to fund the work of, or to award a contract for, the unsolicited proposal at issue in this case.

After reviewing the complaint, including the allegations in plaintiff's complaint and attachments thereto, the court finds that plaintiff has failed to meet its burden to establish that the unsolicited proposal had a substantial chance of receiving a contract award.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED**. Plaintiff's motion for summary judgment is **DISMISSED** as **MOOT**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

MARIAN BLANK HORN
Judge